UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
FEB 26 2008
Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 07 |
| vs. ) | Judge Samuel Der-Yeghiayan |
| ) | |
| DEAN ROUPAS ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant DEAN ROUPAS, and his attorney, WILLIAM HOOKS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges the defendant with corruptly offering, giving, and agreeing to give cash to agents of the Illinois Department of Revenue ("Department of Revenue"), intending to influence and reward those individuals in connection with their duties as auditors for the Department of Revenue, in a series of transactions having a value of $5,000 or more, involving the Department of Revenue, a state agency that received in excess of $10,000 in federal funding in a twelve-month period, in violation of Title 18, United States Code, Section 666(a)(2).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to the indictment. Count One charges the defendant with corruptly offering, giving, and agreeing to give cash to agents of the Department of Revenue, intending to influence and reward those individuals in connection with their duties as auditors for the Department of Revenue, in a series of transactions having a value of $5,000 or more, involving the Department of Revenue, a state agency that received in excess of $10,000 in federal funding in a twelve-month period, in violation of Title 18, United States Code, Section 666(a)(2).

### Factual Basis

6. The defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt and relevant conduct beyond a reasonable doubt:

With respect to Count 1 of the indictment, defendant DEAN ROUPAS ("Roupas"), who is an attorney, admits that, from in or about July 2002 to in or about June 2003, he corruptly offered, gave, and agreed to give cash to Michael Krol ("Krol"), Chuck Maali ("Maali"), and Leo Langley ("Langley"), who were employed as auditors by the Illinois Department of Revenue ("IDR"), intending to influence and reward each of those individuals in connection with their duties for the IDR, and to pay for their referral of clients to him, in

a series of transactions having a value of $5,000 or more, involving the IDR, a state agency that received in excess of $10,000 in federal funding in a twelve-month period.

As a result of this scheme, Roupas received a total of approximately $148,800 in attorney's fees. Between approximately November 2000 and October 2003, Roupas paid bribes totaling approximately $40,000 to Krol, Maali, and Langley. Roupas made all of the payments in cash, in order to conceal the fact that Roupas was making such payments. At the time that Roupas made those payments, he believed that it was illegal for him to do so. Because Krol, Maali, and Langley were accepting cash payments from him, Roupas expected favorable treatment from each of them when they were involved in tax cases that Roupas was handling.

**Payments to Krol**: Roupas paid Krol cash in order to influence and reward Krol for his help, assistance, and advice in connection with cases, including past and future cases, in which Krol was the auditor, and to pay for Krol's referral of cases. In exchange for the payments made by Roupas, Krol took certain steps in his capacity as an IDR auditor to help Roupas, which included the following: Krol lowered the final tax liability for certain clients that were being represented by Roupas; Krol provided confidential internal IDR documents to Roupas relating to clients being represented by Roupas; Krol gave Roupas advice that was helpful to certain clients being represented by Roupas; in one case, Krol gave Roupas information that he was able to use successfully to rebut the assessment of a civil fraud penalty; and Krol referred individuals who were being audited by the IDR to Roupas.

Roupas made cash payments to Krol totaling approximately $16,000, which included the following: (a) In or about April 2002, Roupas paid $5,000; (b) In or about October 2002, Roupas paid $10,000; and (c) In or about October 2003, Roupas paid $1,000. Roupas believed that his payments to Krol influenced Krol's decisions concerning certain audits.

**Payments to Maali**: Roupas paid Maali cash in order to influence and reward Maali for his help, assistance, and advice in connection with cases, including past and future cases, in which Maali was the auditor, and to pay for Maali's referral of cases. In exchange for the payments made by Roupas, Maali took certain steps in his capacity as an IDR auditor to help Roupas, which included the following: Maali lowered the final tax liability for in a case that was being handled by Roupas; in another case, Maali presented inflated figures concerning the tax liability, and then lowered the tax liability substantially; in one case Maali gave Roupas information that he was able to use successfully to defend against the assessment of a civil fraud penalty; and Maali referred individuals being audited by the IDR to Roupas.

Roupas made cash payments to Maali totaling approximately $16,500, which included the following: (a) In or about July 2001, Roupas paid $2,000; (b) In or about October 2002, Roupas paid $11,500; and (c) In or about January 2003, Roupas paid $1,000; (d) In or about April 2003, Roupas paid $2,000. Roupas believed that his payments to Maali influenced Maali's decision making in connection with certain audits.

**Payments to Langley**: Roupas paid Langley cash in order to influence and reward Langley for his help, assistance, and advice in connection with cases, including past and

future cases, in which Langley was the auditor, and to pay for Langley's referral of cases. In exchange for the payments made by Roupas, Langley took certain steps in his capacity as an IDR auditor to help Roupas, which included the following: Langley lowered the final tax liability for certain clients that were being represented by Roupas; Langley provided confidential internal information concerning certain IDR Bureau of Criminal Investigation guidelines; Langley gave Roupas advice that was helpful to certain clients being represented by Roupas; in two cases Langley imposed a negligence penalty instead of a civil fraud penalty, resulting in a lower tax liability; and Langley referred individuals who were being audited by the IDR to Roupas. Roupas made cash payments to Langley totaling approximately $7,500, which included the following: (a) In or about March 2002, Roupas paid $2,500; and (b) In or about April 2003, Roupas paid $5,000. Roupas believed that his payments to Langley influenced Langley's decision making in connection with certain audits.

7. Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3: As described above, Roupas made payments to Krol, Maali, and Langley, which payments are identified above, intending to influence and reward each of them in connection with work for the IDR, before and after the charged conduct. Roupas also paid two other IDR employees a total of approximately $2,000 to pay and reward them for the referral of approximately 8 cases, and to influence them to refer cases to him in the future.

8. The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines. Applicable Guidelines.** The parties disagree on the appropriate Sentencing Guidelines Manual to be applied in this case. It is the government's position that the Sentencing Guidelines to be applied are those in effect at the time of sentencing, namely the 2007 Guidelines. The defendant reserves the right to argue that an earlier version of the Guidelines should be applied, namely the 2002 Guidelines.

    b. **Offense Level Calculations.**

        i. The base offense level for the charge in the indictment is 12, pursuant to 2007 Guideline §2C1.1(a)(2), or the base offense level is 10 pursuant to the 2002 Guidelines.

        ii. Pursuant to Guidelines § 2C1.1(b)(1), the base offense level should be increased by 2 levels because the offense involved more than one bribe.

        iii. Pursuant to Guideline §§ 2C1.1(b)(2)(A)(ii), and 2B1.1(b)(1)(F), the base offense level should be increased by 10 levels because the value of the benefit received by the defendant, based on the charged conduct and relevant conduct, was approximately $148,800, namely, attorney's fees paid by individuals referred to the defendant, which was more than $120,000 but less than $200,000.

        iv. The parties agree that the base offense level should be increased by 4 levels, pursuant to Guideline § 3B1.1(a), based on the defendant's role in the offense because the

defendant was an organizer/leader of a criminal activity that involved 5 or more participants, in that defendant Roupas planned the offense, recruited defendants Krol, Maali, Langley, and two others, and gave them directions concerning the execution of the scheme.

   v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   vi. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 23 or 25, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory

Sentencing Guidelines range of either **46 to 57, or 57 to 71** months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, certain components of those calculations – specifically, those set forth above subparagraphs 11(b) (ii), (iii), and (iv) – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

  g. Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or

by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

12. Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

13. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the low end of the 2002 Guidelines range, and shall recommend a sentence of 50% of the low end of the 2002 guidelines range. The defendant began cooperating prior to the decision in *U.S. v. Demaree*, 459 F.3d 791 (7th Cir. 2006), and the government believes that

the recommended sentence is a reasonable one in light of the pre-*Demaree* guidelines, and the defendant's substantial cooperation. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

14. If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16. Regarding restitution, the parties acknowledge that the total amount of restitution owed to Roupas's clients - based on the charged conduct and the relevant conduct set forth above - is $148,800, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together

11

with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing. Defendant also agrees to pay the portion of that restitution which arises from the relevant conduct set forth above, pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

17. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or

refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 07.

22.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

  a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

    i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.      **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.      **Waiver of the Statute of Limitations.**  By signing this document, defendant knowingly waives any right to have the charge in the indictment brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the indictment was brought.

d. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charge in the indictment brought within five years of the last of the alleged acts constituting the specified violation.

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the U. S. Attorney's Office.

## Conclusion

25. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 26 Feb 2008

_____
PATRICK J. FITZGERALD
United States Attorney

_____
DEAN ROUPAS
Defendant

_____
JACQUELINE STERN
Assistant U.S. Attorney

_____
WILLIAM HOOKS
Attorney for Defendant

18