UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | **No.  08 CR 007 - 03** |
| | ) | |
| v. | ) | Honorable Samuel Der-Yeghiayan |
| | ) | Judge Presiding |
| CHUCK MAALI, | ) | |
|     Defendant. | ) | |

### DEFENDANT CHUCK MAALI'S SENTENCING MEMORANDUM BASED ON §3553(a)

Chuck Maali, defendant herein, by and through his counsel, Steven Shobat, respectfully requests the Court to consider the following matters pursuant to 18 U.S.C.§3553(a) in support of his sentencing hearing, which is set for Wednesday, June 25, 2008 at 10:00 a.m.  By prior order of the Court, the defendant's objections and sentencing submission is due by June 18, 2008.  This submission has no objections to the advisory sentencing guidelines or the criminal history calculations.  The government has indicated that a departure below the advisory guideline range is appropriate in light of the defendant's substantial assistance and it is expected that the government will make a U.S.S.G. §5K1.1 motion.  In addition, defendant's section 3553(a) submission seeks a sentence below the advisory guideline range and the government's proposed recommendation based on the unique circumstances of the defendant's personal history and characteristics and circumstances of the offense.

**1.      The Court Has Sentencing Discretion to Select the Appropriate Sentence From Probation Up to Ten Years.**

Following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), "the federal Sentencing Guidelines [are] effectively advisory." Notwithstanding the advisory nature of the sentencing guidelines, the Supreme Court has held post-*Booker* that because sentencing courts are still required to consult with and take advice from the Sentencing Guidelines,

the sentencing determination must begin with an accurate calculation of the applicable Guidelines. *Gall v. United States*, 522 U.S. __, 128 S. Ct. 586, 597 (2007); *Rita v. United States*, 551 U.S. __, 127 S. Ct. 2456, 2459 (2007).

The probation officer has calculated defendant Maali's advisory guideline level as Level 17, Criminal History Category I, yielding a sentencing guideline range of 24 to 30 months. Based on the guidelines in effect at the time of the offense, however, the defendant's Level is Level 13, yielding an advisory range of 12 to 18 months. Defendant has reviewed the advisory guideline calculations and has no objections to either the 2007 advisory guideline range calculation or the 2002 advisory guideline range calculation.

Importantly, as the Seventh Circuit has made abundantly clear, the proposed advisory guideline range is not presumed to be the "correct" sentence to be imposed and it is error for a sentencing court to presume the advisory range is the appropriate sentence. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). Instead, this Court's sentencing decision is committed to its sound discretion guided only by the parameters of the statutory maximum and minimum sentence, the factors enumerated in Section 3553 of Title 18 of the United States Code, and the directive to impose a sentence "sufficient but not greater than necessary" to comply with the purposes of sentencing set forth in Section 3553(a)(2). *United States v. Hollins*, 498 F.3d 622, 629 (7th Cir. 2007). We believe that, in the exercise of this Court's discretion, the sentence in this case which is both sufficient to accomplish the purposes of Section 3553(a) but not greater than necessary is a sentence below both the 2002 advisory sentencing guideline range and the government's recommendation of 6 months incarceration.

2.  **Section 3553(a)**

The sentencing purposes of Section 3553(a)(2) are (A) to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* §3553(a)(2). Further, if they are applicable, a sentencing court must consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant (§3553(a)(1));
> (2) the kinds of sentences available (§3553(a)(3));
> (3) the sentencing guidelines and any pertinent policy statements issued by the Sentencing Commission  (§3553(a)(4)-(5));
> (4) the need to avoid unwarranted sentencing disparities among similarly situated defendants (§3553(a)(6)); and
> (5) the need to provide restitution to any victim of the offense (§3553(a)(7)).

It is the sentencing court's decision to determine what weight to place on any one of these individual factors. *United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006)("The statute does not weight the factors.  That is left to the sentencing judge, within the bounds of reason, which are wide.") Under these factors, defendant Chuck Maali respectfully submits that he should be sentenced to a sentence below the advisory guideline range and below the government's recommended six month sentence. Such a sentence is more than sufficient to accomplish each and every one of the objectives of Section 3553(a).

**3.    Factors Supporting a Lesser Sentence**

    **(A)    Defendant's Criminal History and Personal Characteristics.**

Section 3553(a)(1) directs this Court to consider the history and characteristics of the defendant. Defendant Maali is 44 years old. His Criminal History Category is Category I. He has no prior convictions or arrests of any kind.  He has achieved his advanced adulthood without any criminal interaction.  He committed the offenses charged in the indictment and acknowledged in the

plea agreement intermittently over a year and one-half while employed with the Illinois Department of Revenue. In the five years since he began cooperating with the FBI in an undercover capacity, he has not been involved in any wrongdoing of any kind. In short, his criminal background provides a more than sufficient basis for this Court to conclude that he poses no risk of recidivism to society and no likelihood that he would commit such an offense (or any offense) again.

Chuck Maali has been a person of extraordinary character throughout his life. He has been a good son and brother, a good husband to his wife Diana, a good father to his two minor children, and a good friend. (See attached character letters). He has been gainfully employed his entire adult life and has taken care of himself and his family. He has performed important charitable work for his church and for his community and has assisted many others with "the best portion of a good man's life, – his little, nameless, unremembered acts of kindness and love."

He is presently suffering from a serious physical illness: cyclic leukopenia, an abnormal shortage of white-blood cells, which requires him to be specially medicated and which comes upon him suddenly often as a result of stress. The inability to fight infection means that he is particularly susceptible to bacterial infections and his depressed immune system exposes him to the risk of contracting communicable and infectious diseases.

In short, his personal characteristics are of the kind that defendant poses no risk of recidivism to the public, no need to protect the public from harm by incarceration, and no need to imprison the defendant. Indeed, a period of incarceration, even a short one, will disproportionately harm his family and create economic hardships and dislocation, and pose a risk to Mr. Maali's health, that is unnecessary and inappropriate to serve any interest recognized under Section 3553(a).

**(B)** **The Nature and Circumstances of the Offense Conduct.**

Section 3553(a)(1) also directs this Court to consider the nature and characteristics of the

4

offense.  The offense for which Chuck Maali stands convicted is a serious one.  To understand why he committed the offense, is to understand the circumstances of his position as an auditor at the Department of Revenue.  At the time that he was employed there, he was the only Muslim and Arab auditor.  As a result, he suffered discrimination in his assignments and harassing conduct from fellow employees and supervisors.  This hostile working environment accelerated and his complaint went unheeded.  Finally, the discrimination culminated in Mr. Maali's involuntary resignation from the Department after he was physically assaulted by a supervisor.  He eventually settled his claim of national origin and race discrimination against the Department after the EEOC found it to be a valid claim.

In addition to this feeling of isolation and stress from this pattern of discrimination against him, extreme pressure was placed on Mr. Maali by the former head of the Department, codefendant Dean Roupas's father.  All of the auditors in this case have noted that they were pressured by the head of the Department to refer cases to his son.  This pressure took the form of outright badgering and monitoring of the auditor's case load and referrals to outside attorneys.  While the official policy of the Department was (rightfully) that such attorney referrals were forbidden, in practice, they were encouraged (and demanded) at the highest levels.

In addition to these stresses at work, defendant suffered personal stresses at home.  His brother became unemployed and had to be supported by Mr. Maali.  Mr. Maali's wife became pregnant and had a difficult pregnancy.  The combination of all of these stresses convinced Mr. Maali that he had nowhere to turn.  He made wrongful decisions in agreeing to make referrals to codefendant Roupas and he knows now he should have never accepted any payments or things of value from him or anyone else in relation to his auditing activities.  But at the time, he felt that he had nowhere to turn and no one who could have understood his plight or help him.

5

These facts do not justify Mr. Maali's criminal conduct in any way, but they do place in context the reasons why he believed he could not simply refuse the offers or quit his job – two of the outlets he could have and should have used before agreeing to break the law. He now understands that and regrets very much his failure to make those right choices at the time. But these conditions help explain why he committed the offenses, and also explain that his motives were not because he was corrupt through and through or determined to cheat the citizens of the State of Illinois from the outset, but rather were the result of bad decisions made by an essentially good man, who, absent the conditions he found himself in, was singularly unlikely to have violated his public trust. In our view, these are mitigating circumstances which stand in contrast to the conduct of others convicted of these offenses.

**(C)     Defendant's Cooperation Was Extraordinary**

It was for that reason that Mr. Maali views the day that he was visited at home by the two FBI agents regarding his conduct as the day that provided him the escape that he did not even know then he was seeking. It is why when confronted by the FBI about his wrongdoing he agreed immediately to admit everything and to cooperate with the government. He has continued to cooperate with the government from that day forward and his cooperation was critical in obtaining the cooperation of codefendant Roupas, who in turn cooperated against the other codefendants. The government will more fully detail the extent of the defendant's cooperation; suffice it to say that his extended cooperation represents Mr. Maali's decision to make amends for his error and to try to right the wrongs he committed while employed at the Illinois Department of Revenue. His decision to amend his ways constitute significant evidence of contrition and remorse and the need for incarceration in such a case is diminshed.

**(D)     Maali has lived with the investigation for over six years**

Defendant Maali was approached by the FBI in 2002. He has continued to cooperate since that time and has kept secret his cooperation over all these years. He also has been unaware of when the charges would be brought against him or the others. He signed waivers of the statute of limitations to accommodate the government's needs in respect to the timing of the return of the charges. He has had to live with the prospect of these pending charges for over six years. The pendency of these matters has taken a great toll on him, both physically and psychologically. That it has continued for such a length of time has made it difficult for him to obtain employment and to keep it. For example, his employment with the California Department of Revenue came to an end upon the filing of the charges in this case – not as a result of any misconduct associated with the agency but simply because the Department could not keep him in its employ in light of the nature of the charges brought here. Since his termination from the Department, he has been virtually unemployable again, as any new employer would have to be told of the pending charges and with the expectation that he might be terminated upon conviction or upon imposition of sentencing.

Delay in the initiation of charges has been viewed, even when the guidelines were mandatory as a significant reason for a downward departure. *E.g.*, *United States v. Neuendank*, 2004 WL 419915 (N.D. Ill. 2004)(Kennelly, J.)(case brought within statute of limitations but just shy of five years after offense warranted a downward departure). The reasons delay has been viewed as significant are threefold: the need for deterrence diminishes as the time between the offense and the sentencing increases, the need for further rehabilitation can be lessened when the defendant "self-corrects" by changing his criminal conduct and reforming himself on his own, and the need to protect the public is diminished by a defendant who had demonstrated no harm to the public over the years between the offense and sentencing. All of these factors work in favor of a probation sentence here where defendant Maali has corrected his own conduct, the need to protect the public from him is

nonexistent, and the prosecution itself (and the felony conviction) provides sufficient deterrence for the conduct defendant engaged in. Moreover, a sentence of incarceration can at this point actually create more harm than any benefit it could serve.

**4.      The Reasonable Sentence Is a Sentence Below the Sentencing Guideline Range.**

*Booker* recognizes a sentencing court must "consult [the] Guidelines and take them into account when sentencing," but holds they are not mandatory. The one thing that remains clear is that *"Booker* is not an invitation to do business as usual." *United States v. Ranum*, 353 F. Supp.2d 984, 987 (E.D. Wis. 2005). It is respectfully suggested that a sentence of straight probation, or at worst, a sentence of probation with the condition of community confinement, is manifestly sufficient punishment for Chuck Maali for this Court to accomplish all of the goals identified in Section 3553(a). Given his lack of any criminal history, the nature and circumstances of the offense and his participation in it, the extraordinary cooperation he provided the government, significant period of time in which he has lived with the pendency of these charges, a sentence below the advisory sentencing guidelines and below the government's proposed recommendation is appropriate. Such a sentence would protect the public, provide a general deterrence, promote respect for the law, and would not deprecate the seriousness of the offense. This Court should so find.

        Respectfully submitted,

        /s/  *Steven Shobat*
        Steven Shobat

        Attorney for Chuck Maali

Dated:  June 18, 2008

Steven Shobat
53 West Jackson Boulevard
Suite 1603
Chicago, IL 60604
(312) 353-2118
steven.shobat@sbcglobal.net